We are going to wait a moment to see if our last appellant is here. Our last case for today is Straw v. Village of Streamwood, and if you are Mr. Straw, we are ready to hear from you. Good morning, Your Honors. Good morning. And may it please the court, my name is Andrew Straw, and my appeal is about standing because the court below has said that I did not have standing to object to piles of ice and snow in public sidewalks. So, you know, in the informal Pauperis order of the case below, the court, you know, the court granted it, and it was really, she said that I am a qualified person with a disability. Well, she said taking the record in the light as it needs to be taken at this point, so she certainly wasn't finally resolving any issues. Sure, and she also mentioned the Culvehouse case, Culvehouse v. LaPorte, and in that case, it was a very similar question of whether, you know, the city of LaPorte in Indiana could, you know, if they had to maintain their sidewalks or not. And the judge in that case said yes, you have to maintain the sidewalks, and in that opinion, which was mentioned in my IFP order but not in the order that dismissed my case, but the court over in Northern District of Indiana said that parties don't dispute that all members of the class, because it was a class action, are qualified individuals with disabilities within the meaning of the ADA and have standing to bring this action. And then there's a footnote, very important footnote that describes the class of people who were recognized as having standing. And in that footnote, it says the plaintiff class in this action is defined as all persons who live or will live or who visit or will visit the city of LaPorte, Indiana, and who, because of a disability as defined by the ADA, either use wheelchairs or wheel devices for movement, have gait disturbances, or three, have other difficulties in ambulation. So I think that's the right standard for standing. So is it your argument you have difficult, I mean, you have, you also say that maybe someday you'll be in a wheelchair, and that's surely not enough, you know, but do you say that you have present problems? Definitely I do. I have pain and like on a day like today where it's raining especially or snowing, especially my left leg at this point, it's, I've got like 14 different pains. Yeah, you showed us pictures of them. Yeah, and it's painful. So you agree that we're not going to pay any attention to the fact that you might someday have something worse. You say you have enough right now. Yeah, I think I have enough right now. I mean, I've got a reconstructed pelvis on this side, and which I think on, as I said in my brief and pleadings that, you know, this is so severe in there that it was completely reconstructed, as you can see in the appendix. So what bothered the district court judge was that these incidents that you mentioned didn't seem to result in anything. There are a lot of pictures taken from your car, not any allegation in Elgin that the snow prevented you from getting your groceries. You know, you managed to navigate the ice and streamwood, you know, just, which is actually after the time of the filing here. So maybe you should roll through the standing requirements. Sure. Well, you know, she brought that up in the. Well, it's a very standard three from Lujan forward. You know, you've got to have an injury. In fact, there's got to be causation. There's got to be redressability. We all. Right. But so what's the injury? In fact, you've suffered from the failure of these places to remove their snow promptly enough. Sure. Well, you know, I have the disability that affects my mobility. No, I know that. And that I would say snowed in Minneapolis. I'm going to assume that's not going to bother you because you're not in Minneapolis. Well, it bothers me. I mean, for different reasons, it bothers me. Because, you know, I have been very public about my disability advocacy in northern Illinois, northern Indiana, southern Indiana. And, you know, I've run for Congress on a disability platform twice. I didn't win, but that was my platform. I've started a party called Disability Party, which, you know, I have a lot of friends who have disabilities that are even worse than mine. You know, wheelchairs and power wheelchairs. Over in South Bend, this court below said that I lost my case in South Bend. That's not true. I did lose on a summary judgment, but the court allowed me to, you know, amend my complaint. And when I did that, then the city wanted to mediate with me, and we came up with a settlement. And Federal Highway Administration was involved over there and gave very, very clear instructions to South Bend that they have to clear their sidewalks. ADA under 28 CFR 35.133 says you have to maintain these public features. And there's a private right of action for that? Well, under Title II of the ADA, you know, Barnes v. Gorman shows that, you know, damages are available when, you know, local government. In that case, it was police, but, you know, governments have to, local governments, state governments, have to abide by the ADA under Title II. And, you know, for me, I was borrowing my fiancee's car. I was taking her mortgage check to the credit union in Bloomingdale. And I was on my way back, and I'm just noticing, gosh, all the sidewalks are full of ice. Not like a sheet of ice, but a pile of ice, big piles of ice, making them completely impassable. So I stopped, and, of course, there's no way I'm going to use a sidewalk like that myself in that condition, so it's totally speculative, you know, in that sense. But in the other sense, that people who live there in this congressional district where I later was running, they're going to run into those problems like every day. So I was not just opposing it for myself, which I was, but for the other people who live in those places. Do they all have standing then? I think all the people who would use a wheelchair or, you know, any kind of assistive device. There's a lot of old people. Yeah, old people, too, yeah. At some point, almost every old person. That's true. That's true. It's very true. They all have standing. Right. If, you know, if you have enough impairment that you are able to say that you're a qualified person with a disability, then I have to ask qualified to do what?  And, you know, say, because I think the answer to the standing question here is going to propagate out, you know, through the Seventh Circuit, but not just there. The whole snow belt is waiting to answer that question. Winter is coming. And, you know, can disabled people complain about it or not? What are the limitations of that? And I agree with the Fiedler case in Maine where there was a guy, I believe, Fiedler was from Baltimore, I believe. Anyway, not from Maine. And he wanted to visit Maine. And there was a hotel up there. And so he calls on the phone and he asks, do you have the features that I need? They didn't. And so he sued them. Okay. And we do know the case. I'm just going to warn you, you have only one minute left. Oh, sure. So if you want to save it for rebuttal. Yeah, so I guess I would say that the standing issue is answered by the Cloverhouse case in the sense that I'm part of that class. Okay. I mean, why don't you, you can respond as you wish. Sure. Thank you. Thank you. All right. Mr. Lemley, the first. May it please the Court. Brandon Lemley on behalf of the Village of Bloomingdale. I'll be addressing issues of general application for all of the four appellees in the case. The Village of Streamwood and Elgin have time set aside as well to address specific issues or specific questions that may relate to them. Now, plaintiff has argued a few things during his argument. Number one, he argues that Cloverhouse and the South Bend case that he previously filed stand for the proposition that the court should effectively find that the ADA would apply, requiring all municipalities to effectively shovel every sidewalk within their jurisdiction after a snow. That is respectively a merits issue. The sole issue in front of this court has to do with standing. And, in fact, the court lacks appellate jurisdiction to even address the merits of the ADA claim. And that's because there were motions that were filed under 12B1 and 12B6. However, the district court only addressed the 12B1 motions, and there's been no cross-appeal that's been filed. So the issues that relate to the merits are not before the court. To the extent that plaintiff is looking for some sort of an advisory opinion telling all municipalities within the quote-unquote snow belt that they need to shovel sidewalks. Well, but underlying at least some of them, maybe not your client, maybe not Bloomingdale, but in Elgin, for example, he gets pretty specific. He says there's snow on the path that I use when I go to the corner convenience store to get food. That sounds to me like a very immediate allegation. A person has a need not to be on a slippery, slidey path to go get food. He's got background of it, although all you really have to do is allege. In your case, well, actually, no, this is Streamwood. But anyway, the facts are different, and they're particularized in some instances. Why is standing the right approach there? And I'm sorry, are you asking me why? For Elgin, for example, where he's talking about, I know you've said you're going to talk about general issues. And I'm saying the requirements for standing show that there's an injury particularized to you. And if you show, A, I live in the area, B, there's a sidewalk, it goes to someplace that I need to go to, you know, it's an immediate, I'm injured because I can't walk to the nearest food store, why isn't that something that meets the Lujan criteria? Well, quite frankly, with regard to the allegations with regard to Elgin, there have been no allegations that reflect that the plaintiff had any adverse effect. He was able to- But he has to fall down before he can sue to get the snow removed? No, and certainly we're not arguing that there needs to be a futile gesture. But in fact, the question is whether or not the- It's not a futile gesture. Are you arguing that he has to actually break his leg first before he is standing? I'm not, Your Honor. All right. And you're right that the four different defendants that have been sued, and effectively- They're in somewhat different positions, yeah. And effectively, this is four different cases that have been joined into one. The case with regard to Bloomingdale and Glendale Heights are both very similar. The case is slightly different with regard to Streamwood, and it's slightly different still with regard to Elgin. And we're not taking a position that the plaintiff has to actually fall down and break his leg in order to have standing. So why isn't it enough, then? Suppose I decided to sue the city of Chicago for failing to clear Jackson Street from Union Station over to the courthouse because when I take the train in, I have to walk on Jackson Street. Is that too remote? The city could certainly send Streets and Sand out and clear the sidewalks. The question becomes whether or not there is some particular injury to you, whether or not- I don't care about the residence streets in Chicago. I want that one clear. The point that I'm trying to get to, Your Honor, is that the question is simply whether there was an adverse effect on the plaintiff with regard to the allegations that have been set forth. Right. And what if he says the adverse effect is because this snow is not cleared, I can't get to my grocery store? Is he required to take a cab? Is he required to hire somebody himself to shovel it? What's he need to do? No, Your Honor, but the issue, at least that we have addressed in the facts, limited facts of this context, and to be clear, the facts were not alleged in the complaint whatsoever. What little facts that we know came out of a response brief to the motions to dismiss, and specifically with regard, and this is solely with regard to Elgin's response. But the issue is that he simply did not face, on that particular day, did not face a blockage or deterrence, did not have an adverse effect resulting from it. Whether it may occur in the future, I don't know, but at a minimum, in order to bring a suit, say, for injunctive relief where you're speaking of future conduct, you have to be able to allege an actual adverse reaction in the past. Now, what would you view as an adequate adverse effect? An allegation that he had to go around the block the other way in order to get to the store? Would that suffice? It probably would, Your Honor, because there is some result, some adverse effect. Is there such an allegation? I understand there may be nothing in the complaint, but in the response to the motion to dismiss, was there an allegation of that sort? Not in the response to the motion to dismiss. And again, we're still solely speaking about Elgin with regard to this. Yes. And if I could, because it is dealing with my client as well, with regard to the Village of Bloomingdale, Glendale Heights, it all concerns the events of March 8, 2015, where he was driving in a car. He admits in his responses to the motion to dismiss that the only reason he even stopped the car in the first place was to simply take pictures of the snow. He had no intention of using the sidewalk. There was simply no injury. Okay. It seems your questions deal with other defendants more than me. All right. We will hear from them. Ms. Emery. And you are Streamwood, is that correct? That's correct. May it please the Court, thank you. Ellen Emery on behalf of the Village of Streamwood. Particular to Streamwood is also an allegation that has nothing to do with snow, and that's Streamwood's employee parking lot. Now, not knowing the accommodations that are made by Streamwood for disabled employees, because he's not an employee, Mr. Straw just drove in there on a night and saw there was no handicap space and no access ramp from the employee parking lot into Village Hall. So he threw that in, and it had nothing to do with snow. He has no standing. He's not an employee, so he's not entitled to use the lot in any event. And so that is Streamwood's, beyond all of the joint portions of the brief, is the employee parking lot. He has no standing. He can't be injured by it because he's not an employee. So we agree with Judge Kendall, certainly in that portion of her opinion integral to the entire standing issue, that without being an employee, he certainly can't be injured by the conditions of an employee-only parking lot. All right. Thank you very much. Thank you. Mr. Diano? Good afternoon. May it please the Court. I'm James Diano for the City of Elgin, and I know your questions with respect, and I think Mr. Lemling handled it as I will and would, and that is that there is no allegation in the complaint or in the response of pleadings to the motions to dismiss that there was a specific adverse effect on Mr. Straw on the occasion that he saw snow on that sidewalk. So he didn't have to call a delivery service for groceries. He didn't have to go around the block. He didn't do anything. No. Didn't drive 10 miles further to a better grocery store. Right. And in that sense, I think it fits within what the courts have called generalized grievance. He's saying, I saw snow on the sidewalk. What if he walks more slowly because the sidewalk is all full of bumpy ice such as we all see sometimes? And so although you can navigate it, you don't walk along at the same pace as you would on a nice, clean sidewalk. Well, because that's not alleged, I wouldn't know how to respond to that hypothetical. I wouldn't admit that that does create standing in the sense that there is an adverse effect. What we know here is that the district court ruled on the fact that nothing that the plaintiff brought to the court suggested that the condition of this sidewalk prevented him from accomplishing any goal that day. If there are any more questions, I'd be happy to deal with them. I see none. So thank you very much. Mr. Straw, you have, I think, a minute. Well, I'm glad that I don't have to break my legs before I have standing. Because the ADA is a civil rights law. It's not a tort law. Although that would certainly increase the likelihood that you could see it as standing. But I don't think that's what you need to prove to show standing. That's why I brought up the Trafficante case and repeated so often in my brief about it. Nine to zero, U.S. Supreme Court decision mentioned favorably in Lujan that says standing in a civil rights case is the defendant violates the civil rights law. And the person complaining fits into the category that is envisioned to be protected by that law. And I think that's how the ADA should be treated. And that's how the Fiedler case treated it over in Maine. And I hope that that could be the standing test here. All right. Thank you very much. Thanks to counsel for the various villages. We will take the case under advisement and the court will be in recess. Thank you.